**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| KILTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| AURORA CLIMBING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF KILTER, INC.'S COMPLAINT FOR DAMAGES**

NOW COMES the Plaintiff, Kilter, Inc. ("Kilter"), through its undersigned counsel, and brings this breach of contract action against Defendant Aurora Climbing, Inc. ("Defendant" or "Aurora") and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Kilter and Aurora formed a joint partnership to create a software application used in tandem with Kilter's rock climbing board. Kilter jointly participated in the research, design, build, test, finance, market, and customer service of the software application.

2.    When Kilter sought to add new functions to the software application, Aurora re-skinned the software application and distributed it to Kilter's competitors. Aurora locked Kilter out of the app and severed business relations in order to force Kilter to accept new unilateral terms regarding the ownership of the jointly created app. Aurora further refused to supply Kilter with light kits to make the climbing boards functional.

3.    Kilter brings suit regarding Aurora's breach of contract and breach of the duty of good faith and fair dealing. Alternatively, Kilter brings suit for promissory estoppel and unjust enrichment.

## II.    PARTIES

4.    Kilter, Inc. is a Colorado corporation with its principal place of business located at 3762 Puritan Way, Unit 3, Frederick, Colorado 80516.

5.    Aurora Climbing, Inc. is a Canadian corporation with its principal place of business located at 38893 Gambier Avenue, Squamish, British Columbia, Canada V8B 0E8.

## III.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2), because the amount in controversy exceeds $75,000, and this action is between a citizen of this State and a subject of a foreign state—Kilter is a citizen of Colorado and Aurora is a citizen of Canada.

7.    This Court has personal jurisdiction over Aurora pursuant to F.R.C.P. 4(k)(1)(A) and C.R.S. § 13-1-124(a) because Aurora transacted business within the State of Colorado. Specifically, (1) Aurora entered into business transactions with Kilter in Colorado to create a technology deployed by Aurora throughout the State of Colorado to countless customers; (2) the software application jointly developed by Kilter and Aurora is used by Colorado residents and customers throughout the State of Colorado; (3) Kilter conducts its business principally and almost exclusively from its Colorado headquarters; (4) Aurora sold hundreds of light kits to Kilter in Colorado across years, repeatedly transacting business in Colorado; (5) Aurora corresponded with Kilter personnel in Colorado regarding development of the software application, customers, purchases, and countless other business topics on hundreds of occasions by mail, electronic mail, and telephone; (6) Kilter paid Aurora in excess of $2,500,000 for its products and services; (7) Aurora further visited Colorado during the parties' business relationship to help test and market

2

the software application; and (8) Aurora sent invoices to Kilter in Colorado for payment of services and goods. In these ways, Aurora purposefully directed its business activities to Colorado and availed itself of the privilege of conducting business in Colorado. The claims and damages in this lawsuit arise from these activities surrounding the Parties' joint development of the software application and Aurora's breach of the parties' contract.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2). Aurora transacts business in the District of Colorado, and a substantial part of the events giving rise to this lawsuit occurred within the District of Colorado as set forth below.

### IV.    STATEMENT OF FACTS

9.    Kilter, a climbing technology company based in Boulder, Colorado, developed the Kilter Board, a customized layout of unique holds with clear bases that was designed to be shared around the world.

10.    In 2017, Kilter began a partnership with Aurora Climbing, Inc. for the specific purposes of developing light up holds and the Kilter App, a mobile technology allowing users to track their ascents and bookmark their projects using the Kilter Board.

11.    During the development stages of the Kilter App, Kilter representatives played a necessary role in designing and building the Kilter App by:

  a.    Defining the size and function of the board;

  b.    Creating angle configurations;

  c.    Developing color schemes;

  d.    Creating unique layouts and new sub-layouts along with board sizing;

  e.    Directing the configuration of the Kilter App to incorporate multiple layouts;

3

    f.      Establishing functions that would assist in making the Kilter App more competitive and original;

    g.     Conducting physical research and development to test the Kilter App (including setting and climbing, as well as testing various versions of the application) in order to provide troubleshooting implementations, resolutions, and improvements for the Kilter App;

    h.     Implementing the build of large climbing walls with holds and lights on new grids;

    i.       Maintaining a test space for the climbing walls and coordinating with international athletes for feedback concerning the products;

    j.      Naming functions within the Kilter App;

    k.     Providing industry knowledge and expertise on the indoor climbing industry, including anticipating the needs of climbing gyms;

    l.       Creating functions to improve the application's user-interface (*e.g.*, the copy/paste function, character counts); and

    m.    Developing light schemes for the holds in the Kilter App.

12.    Importantly, Kilter further financially contributed to the research and development behind the Kilter App.

13.    Once finalized, the Kilter App quickly became a popular choice for indoor climbers as it afforded users access to a global network of professional athletes, route setters, gyms, and all other Kilter Board users, for purposes of browsing through thousands of previously recorded bouldering routes mapped on the Kilter Board.

14.    Upon the launch of the Kilter App, Kilter spent its time and money marketing the app and conducted all sales associated with the light boards and products. Kilter independently performed market research and utilized its network in the climbing industry to test, market, and popularize the Kilter App and Board. Kilter also provided customer support to Kilter App users.

15.     Unfortunately, Aurora began to take the partnership in a different direction. Aurora

failed to implement various software features to the Kilter App that had been agreed upon by the

parties and promised to Kilter. Other software modifications were implemented without Kilter's

consent or knowledge. Aurora also began distributing existing functional elements of the Kilter

App to Kilter's direct competitors. In fact, Aurora provided contemplated functional new features

to Kilter's direct competitors while withholding such features from the Kilter App.

16.     Meanwhile, Aurora refused to supplement the Kilter App with new features

including a training application. Aurora further refused offers to have other developers create a

complimentary software application that offered the features Aurora refused to implement. Aurora

then revoked Kilter's access to the Kilter App and all historic climbing data of its customers.

17.     In order to access the Kilter App, its data collected across years of use, and the light

kits that are essential to the functionality of the Kilter Boards, Aurora mandated that Kilter first

agree to newly proposed and *heavily* one-sided Terms and Conditions (the "Terms"). The proposed

Terms overtly favored Aurora and misrepresented Aurora as having *full ownership* of the Kilter

App and, if agreed, would transform the parties' existing business agreements and relationship.

Kilter has been locked out of the Kilter App for roughly six months.

## V.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

18.     Kilter re-alleges the allegations in the Paragraphs above as if fully set forth herein.

19.     To prevail on a breach of contract claim, a plaintiff must prove the existence of a

contract, performance by the plaintiff, failure to perform the contract by the defendant, and

resulting damages to the plaintiff. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 29 (Colo. App. 2011).

A plaintiff must prove the same elements for a breach of oral contract claim. *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825 (Colo. App. 1990).

20.     Here, the parties entered into an agreement to develop the Kilter App, whereby Kilter designed various functions of the app, directed the configuration to include multiple layouts, conducted research and development testing, and provided expertise to guide customer experience, among other indispensable actions. Kilter further financially contributed to the research and development of the Kilter App, marketed the App, and provided customer support to users.

21.     Kilter fully performed all of its duties owed to Aurora under the parties' agreement.

22.     In turn, Aurora breached the parties' agreement by distributing and selling existing functional elements of the Kilter App to Kilter's direct competitors. Aurora further sold contemplated functional new features to Kilter's direct competitors while withholding such features from the Kilter App.

23.     Aurora further breached the parties' agreement by refusing to implement various software features to the Kilter App that had been agreed upon by the parties and promised to Kilter.

24.     Aurora further breached the parties' agreement by unilaterally asserting 100% ownership over the Kilter App.

25.     Aurora further breached the parties' agreement by refusing to deliver to Kilter the Light Kits unless Kilter first agreed to the newly proposed Terms.

26.     Any and all conditions precedent to Kilter's obligations under the parties' agreement have been performed or have occurred.

27.     As a result of Aurora's breaches, Kilter has suffered monetary damages in an amount exceeding $1,000,000.00, plus applicable fees, costs, and judgment interest.

**SECOND CLAIM FOR RELIEF – BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR
DEALING**

28.     Kilter re-alleges the allegations in the Paragraphs above as if fully set forth herein.

29.     Kilter and Aurora's business agreement contained a justified expectation that each

party would act in a reasonable manner in performance of the agreement. The implied duty of good

faith and fair dealing holds that a contract is breached when a defendant uses discretion to act

dishonestly or outside of accepted commercial practices to deprive the plaintiff of the benefit of

the contract.

30.     Kilter and Aurora had an agreement to jointly develop the Kilter App and share in

its ownership. Kilter fully performed pursuant to the parties' agreement and accepted commercial

practices. Aurora acted in an unreasonable manner by:

    a.     distributing and selling existing functional elements of the Kilter App to
        Kilter's direct competitors;

    b.     selling contemplated functional new features to Kilter's direct competitors
        while withholding such features from the Kilter App;

    c.     refusing to implement various software features to the Kilter App that had
        been agreed upon by the parties and promised to Kilter;

    d.     unilaterally asserting 100% ownership over the Kilter App; and

    e.     refusing to deliver to Kilter the Light Kits unless Kilter first agreed to the
        newly proposed Terms.

31.     As a result of Aurora's breaches, Kilter has suffered monetary damages in an

amount exceeding $1,000,000.00, plus applicable fees, costs, and judgment interest.

**THIRD CLAIM FOR RELIEF – IN THE ALTERNATIVE, PROMISSORY ESTOPPEL**

32.     The preceding allegations are incorporated as though set forth fully herein,

excluding allegations of an enforceable contract.

7

33.     To prevail on a claim for promissory estoppel, a plaintiff must show that the defendant made a clear promise that the plaintiff reasonably relied upon to its detriment.

34.     Here, Aurora promised to partner with Kilter to jointly develop the Kilter App. As part of their partnership, Aurora promised to develop the functional elements of the Kilter App to Kilter's specifications.

35.     Aurora further promised to share in the ownership of the Kilter App.

36.     Aurora further promised to implement various software features to the Kilter App.

37.     Aurora further promised to sell—without conditions—to Kilter the Light Kits, which were jointly designed and built for Kilter Boards.

38.     In reliance on those promises, Kilter helped research, design, build, test, finance, market, and troubleshoot the Kilter App. Kilter performed in accordance with Aurora's promises, but Aurora has failed to honor its promises as set forth above.

39.     Accordingly, Kilter seeks damages in an amount exceeding $1,000,000.00 against Aurora for the harm caused by its justifiable reliance on Aurora's promises, plus applicable fees, costs, and judgment interest.

**FOURTH CLAIM FOR RELIEF – IN THE ALTERNATIVE, UNJUST ENRICHMENT**

40.     The preceding allegations are incorporated as though set forth fully herein, excluding allegations of an enforceable contract.

41.     To prevail on a claim for unjust enrichment, a plaintiff must show that the defendant received a benefit at the plaintiff's expense and unjustly retained the benefit.

42.     Here, Kilter and Aurora had an agreement to jointly develop the Kilter App and share in its ownership.

8

43.    Aurora received the benefit of Kilter's research, designs, testing, finances, marketing, and customer service all in connection to the creation, distribution, and servicing of the Kilter App.

44.    Despite receiving these benefits, Aurora now asserts 100% ownership over the Kilter App. Aurora is further distributing and selling existing functional elements of the Kilter App and contemplated functional new features to Kilter's direct competitors. Aurora is further withholding such features from the Kilter App.

45.    Accordingly, Kilter now seeks restitution in excess of $1,000,000.00 in monetary damages due to Aurora being unjustly enriched by receipt of the above benefits, plus applicable fees, costs, and judgment interest.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment as follows:

a.    Awarding damages in favor of Kilter, Inc. in an amount exceeding $1,000,000.00, plus applicable fees, costs, and judgment interest;

b.    Awarding any other relief that the Court determines is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: September 29, 2023

Respectfully submitted,

COZEN O'CONNOR

By: */s/ Joseph Okon*
Andrew T. Hepworth
Joseph Okon
707 17th Street, Suite 3100
Denver, CO 80202
Telephone:  720.479.3936
E-mail:  ahepworth@cozen.com
jokon@cozen.com